BENJAMIN & RUFUS SPRAGUE v. CHRISTOPHER RHODES & others.

A demurrer to a bill in equity, for want of equity, cannot be allowed, unless the court is satisfied that no discovery or proof, called for by the bill or founded upon its allegations, can make the cause set forth in it a proper subject of equitable cognizance.

In construing the bill, upon such a demurrer, the court is not at liberty to infer from facts stated in the bill, facts unfavorable to the plaintiff's right to relief, if indeed it is not bound to make, as in case of a demurrer to evidence at law, every reasonable intendment in his favor.

Where a bill, brought to abate a mill-dam which flowed water upon the land of the complainant, alleged that "there has not been upon said dam any mill or other building requiring the use of the waterfall created thereby as a motive power, for more than twenty years last past," upon general demurrer to the bill for want of equity, the court cannot infer that there has been during the twenty years a mill elsewhere than at the dam, on the stream issuing from the pond, which required the use of the pond raised by the dam as a reservoir, for the purpose of trying the question, whether, under the mill act, the defendants had a right to maintain their dam for such purpose.

It is no ground of demurrer to such a bill that although it states or acknowledges that for a period of nearly five years before the filing of the bill the dam had been kept up without compensation made by the defendants, it does not allege that the right of the plaintiffs has, before the filing of the bill, been established in a suit at law; the course of a court of equity in modern times in dealing out its relief upon such a bill admitting of a wide exercise of discretion to adjust its relief to the circumstances, and the lapse of time, short of the time of limitation, being but one element of laches or acquiescence, capable of being explained by proof without any foundation being laid for it in the allegations of the bill.

The practice of the court as to its preliminary and final relief upon such a bill, in modern

times, explained and illustrated, and compared with the practice in the times of Lords Hardwicke and Thurlow.

Such a bill is not demurrable because it does not state a case of irreparable or destructive mischief, so that it states that the dam backs the water upon the land of the plaintiff; since, upon such last allegation, the plaintiff would be at liberty to prove a flow to any, the most destructive extent, and no inferences can be drawn against him upon demurrer.

Nor is the bill demurrable on this last ground, although it admits that during the last twenty years the dam has been kept up, and until within about five years before the filing of the bill, the defendants, as owners of the dam, had compensated the complainants as owners of the lands flowed, for the injury caused by the flowage; for though such admission would be good ground to refuse a preliminary injunction, it would be no ground, the right of the complainant being admitted or established, upon which to refuse relief.

Nor is such a bill demurrable, because, although it does not disclose any right of the defendants, existing at the time of the bill filed, to flow the lands of the complainants, but complains of such flow as a nuisance, it does not allege that the flowage complained of is *not* under claim of right.

The court will not *imply* that the complainant's title is doubtful upon such a bill; and if it were doubtful, though this might modify, it would not necessarily disentitle him to relief.

DEMURRER to a bill in equity. The bill stated that the plaintiffs were seised and possessed, in undivided shares, of two several tracts of land situate in Cranston, in the county of Providence, and both adjoining Spectacle Pond, so called, the one tract containing about twenty-seven acres, and the other about twenty-three acres and forty rods; that the defendants were seised and possessed of a certain lot of land in Cranston, at the outlet of Mashapaug Pond, and that they "have erected and maintained thereon a dam, whereby the water has been caused to flow back upon and injure the aforesaid lands of your orators, situated upon said Spectacle Pond, and thereby create a nuisance thereon." The remainder of the stating part of the bill, the charging and interrogative part thereof being omitted, is as follows:—

"And your orators further complaining say, that there has not been upon said dam any mill or other building requiring the use of the waterfall created thereby, as a motive power, for more than twenty years last past. And your orators further complaining say, that during many of said years, the said dam has been opened, and the water drawn down to the natural level of said Spectacle Pond, and for the time during which the said dam has been maintained and the water kept up, a com-

Sprague *v.* Rhodes & others.

pensation has been paid for the flowage thereof to these complainants by the proprietors of said dam, the said defendants and those from whom they claim, until the year 1851, since which no compensation has been paid.

Prayer, that the defendants be ordered to reduce and remove said dam, and to draw down the water by them caused to be raised upon, and to overflow the land of the plaintiffs, to make compensation to the plaintiffs, and for general relief, and for an injunction upon the defendants to cease, refrain from, and discontinue the erection and maintenance of said dam, so far as the same causes the water to flow back upon the land of the plaintiffs, &c.

To this bill, there was a general demurrer for want of equity.

*Matthewson* for complainants.

*Bradley* for respondents.

AMES, C. J. This bill is brought by the complainants, as owners of two tracts of land in Cranston, bordering on Spectacle Pond, so called, and containing together about fifty acres, to enjoin the defendants against continuing to flow said lands by means of a dam by them kept up at the outlet of Mashapaug Pond; and a general demurrer has been filed to the bill, for want of equity. According to the well-known rule, such a demurrer cannot be allowed, unless the court is satisfied, that no discovery or proof, called for by the bill, or founded upon its allegations, can make the cause set forth in it a proper subject of equitable cognizance. *Curling* v. *Flight*, 5 Hare ; 26 Eng. Cond. Ch. R. 244, 246 ; *Bleecker* v. *Bingham*, 3 Paige, 246 ; *Morton* v. *Granada Academies*, 8 Sm. & Marsh. 773 ; *Clark* v. *Davis*, Harrington (Mich.) Ch. R. 227.

To arrive at such a result, it will be borne in mind, too, that we are not at liberty to infer from facts stated in the bill, facts unfavorable to the plaintiff's right to relief, if indeed we are not bound to make, as in case of a demurrer to evidence at law, every reasonable intendment in his favor. As we have had occasion to state and apply this last rule in the case of *Dike & another* v. *Greene, supra*, 285, decided at this term, it will be unnecessary to do more here than to allude to it.

The first ground of demurrer taken in the argument is, that

as the bill alleges that "there has not been upon said dam any mill or other buildings requiring the use of the waterfall created thereby, as a motive power, for more than twenty years last past," it is open to the implication, that there has been a mill requiring the use of the power created by the dam, elsewhere, on the stream issuing from the pond, for which the pond is used by the defendants as a reservoir;. and as the counsel for the defendants asserted at the argument that such was the fact, he proposed to try the right of his clients, to maintain the dam for such a purpose, under the mill act of this state. The fact may be, and probably is, as the counsel asserts, but, as it is not stated in the bill, we have no right to imply it, upon this demurrer, from any fact that is stated, or is not stated in the bill; and we decline, as we declined at the argument, at this stage of the cause, to enter into the question under the mill act, which he proposes.

The next ground of demurrer alleged is, that although the bill acknowledges, that for a period of nearly five years elapsing between 1850 and the filing of the bill, the dam has been kept up without compensation made by the defendants, it does not allege that the right of the plaintiffs has, before the filing of the bill, been established in a suit at law.

This brings to view, it will be noticed, two elements of objection to the maintenance of the bill, apparent on the face of it.

1st. That as the plaintiffs have slept upon their alleged wrongs for five years, they have been guilty of such laches as to disentitle them to the aid of the court; and

2d. That, at all events, this is true, unless the bill in such a case shows that they have first established their right at law.

It is very true, as indicated by the case of *Weller* v. *Smeaton*, 1 Cox, 102; S. C. 1 Bro. Ch. Cas. 572, relied upon by the defendants, that in the time of Lord Thurlow, it seems to have been considered, that a mere trespass bill was demurrable, if it showed that the nuisance had continued for three years or upwards, unless it also showed that the right upon which it was founded, and in aid of which it invoked the protection of the court had, prior to commencing the bill, been established at law.

But we apprehend that courts of equity at the present day, for the protection of property, deal very differently with both trespass and waste from what they did fifty or sixty years ago, as was substantially remarked by Vice-Chancellor Sir Knight Bruce, in *Haigh* v. *Jagger*, 2 Collyer, 33 Eng. Cond. Ch. R. 236; and we must judge this bill, on demurrer, according to the more enlarged jurisdiction now assumed upon these subjects, rather than by the restricted notions which prevailed in the days of Lord Hardwicke and Lord Thurlow. In *Davenport* v. *Davenport*, 7 Hare, 27 Eng. Cond. Ch. R. 222, Sir Launcelot Shadwell, vice-chancellor of England, traces the progress of the jurisdiction from cases of strict waste, where there was a privity between the parties,—all the earlier cases being of that description,—to cases of mere trespass of a continuous nature; still holding, however, that by the decisions at that time, the jurisdiction was confined to those cases in which the party complaining was in possession of the injured property,—meaning, as we understand it, the *corpus* of the property, at the time of the injury complained of.

In the case of *The East Lancashire Railway Co.* v. *Hattersley*, 8 Hare, 32 Eng. Cond. Ch. R. 89, the same learned judge, referring to his opinion in the last-cited case, again thus speaks of the same subject: " It is clear that the old rule as to interference in cases of trespass, has been very much broken in upon in favor of parties in possession. I referred (in *Davenport* v. *Davenport, supra,*) on this subject, to a case where some miners claimed a right, for the purpose of draining mines, to make a watercourse through a park, and a bill was filed to restrain it. The answer, I remember, to my great surprise when I read it, was simply an assertion that this, if any thing, was a mere trespass, and that in that case the court would not interfere. Neither the vice-chancellor of England nor the lord chancellor would hear of that argument, and the injunction was granted. They had no doubt about the principle."

The course of the court *now* in all this line of cases, whether they grow out of the invasion of patents, or of special privileges secured by acts of parliament, or the perversion of such privileges to the injury of individuals, or are ordinary cases of con-

26 *

tinuing trespass or nuisance, is a course of great latitude and discretion, designed to give the court, for the protection of property, a power so wide and flexible to circumstances, as will enable it to do the precise justice adapted to each particular case. The leading case upon this subject, and which, in England, seems to have guided the exercise of the power of injunction vested in the court in its application to this class of cases, is, the much considered opinion of Lord Cottenham in *Bacon* v. *Jones*, 4 M. & C. 18 Eng. Cond. Ch. R. 436, 437, the question being one, as Sir James Wigram, V. C., tells us in *Cory* v. *The Norwich & Yarmouth Railway Co.* 3 Hare, 25 Eng. Cond. Ch. R. 593, 600, 605, which came repeatedly before Lord Cottenham, and was the subject of several of his most elaborate judgments. In the case of *Bacon* v. *Jones*, which Sir James instances as one in which his lordship considered this question very much, Lord Cottenham, after premising that the jurisdiction of the court was founded upon legal rights, the plaintiff coming into the court on the assumption that he has this legal right, and the court granting its assistance upon that ground, announces the result to which he had come to be, that the granting, or refusing to grant an injunction in such cases was purely a matter within the discretion of the court, whether the question arose upon an interlocutory motion or at the final hearing of the cause. In either case, if there was no question as to the plaintiff's title, and the case required the intervention of the court, it would be granted at once; but if, as was usually the case, the plaintiff's title was disputed, and the injunction were asked on *motion*, the court might either grant the motion, at the same time directing the plaintiff to proceed to establish his title at law, or retaining the bill, suspend the grant of injunction until his title was established,—the defendant in patent cases and the like, in the mean time keeping an account. In interlocutory motions, where the title or right was in dispute, the golden rule, as it may be termed, by which he guided himself, seems to have been this, expressing it in the very language of Sir James Wigram, in the above case of *Cory* v. *The Norwich & Yarmouth Railway Co. supra:* " If giving to the one party the power of doing the acts complained of, would be attended

with irreparable or very serious mischief to the other, the injunction was more commonly granted; but if, on the other hand, there was a balance of inconveniences, the court will generally leave the parties in the situation in which they are, until the legal right shall have been established."

When the cause came to a hearing, Lord Cottenham held, too, that the court had a large discretion left to it; that is, either to grant the injunction without a trial at law, if the case be such as satisfied the court that such a course would do justice between the parties, or, which in England, at least, was the more ordinary course, retain the bill, and give the plaintiff the opportunity of first establishing his right at law; or lastly, if the circumstances of the case required it, of dismissing the bill altogether.

Besides the numerous cases, and especially railway cases, in which these principles have been applied during and since the time of Lord Cottenham, they may be seen applied quite instructively to ordinary cases of nuisance in *Wood* v. *Sutcliffe*, 8 Eng. L. & Eq. 217, (1851,) a case of alleged pollution of a stream of water; in *Soltau* v. *DeHeld*, *supra*, decided in the same year, being a case of a nuisance arising from the frequent ringing of the bells of a Roman Catholic chapel; in *Bostock* v. *The North Staffordshire Railway Co.* 19 Eng. L. & Eq. 307, (1852,) the case of a nuisance from collecting a large concourse of people, by giving regattas on a canal reservoir, and thereby causing trespasses upon the park of a lady adjoining the reservoir, and injuring her rights of fishing and sporting over the greater part of it; and in *Attorney-General* v. *The Sheffield Gas Consumers' Co.* 19 Eng. L. & Eq. 639, (1853,) an alleged nuisance, both to individuals and the public, from laying down gas-pipes in the streets and highways of Sheffield. See, too, *Dewhirst et al.* v. *Wigley et al.* 1 C. P. Cooper's Ch. Pr. Rep. 319; *Duke of Beaufort* v. *Morris*, 6 Hare, 31 Eng. Cond. Ch. R. 340.

It is quite obvious, that if such be the latitude of the discretion now exercised by a court of equity over a nuisance bill, that a demurrer to such a bill because,—the nuisance having existed four or five years,—the bill does not allege that the right

of the plaintiffs has been established at law, has no ground for allowance.

The mere fact that the right of the plaintiff has not been established at law " may be ground, and is ground very often for refusing an injunction *upon motion;* but is it ground for demurrer?" This question was, in these very words, asked by Vice-Chancellor Kindersley, in the case of *Soltau* v. *De Held,* 17 Eng. L. & Eq. R. 117; and he answers, " No, I am not aware of any cases in which it has been so decided." He then reviews several cases, for the purpose of showing that the question of nuisance, if disputed, must be settled at law, and then says: " But I do not know where it is laid down that a bill will not lie, that is, that it is ground of demurrer, because the action has not yet been brought."

The other element of the objection we are considering, and for which the case of *Weller* v. *Smeaton, supra,* is cited in support, is, that it appears from the bill, that for nearly five years prior to the filing of it, the dam had been maintained to the injury of the defendants without compensation.

Such a delay would, it seems, according to that case, have been fatal to the bill, on demurrer, because, as Lord Thurlow is reported to have said, it " is considered such a laches as to preclude the party from having relief here *without first going to law.*" The logic of this reason is not very apparent, since it supposes that *after the right is established at law* the plaintiff may have relief, unless for the word " laches " in the above sentence, we read " acquiescence," and suppose that a three years' acquiescence in the act of the defendant, and of a course, as in this case, a five years' acquiescence, throws a doubt upon the legal right of the plaintiff, and imposes upon him the necessity, therefore, of establishing his right at law before he can have the aid of a court of equity for its protection.

We have seen, however, that courts of equity at the present day, give protection to property, in a proper case, when a nuisance is committed upon it, by preliminary injunction, even though the right be doubtful; and under other circumstances, retaining the bill, take order for the establishment of the right at law, before granting temporary or final relief by injunction,

as well, as in some cases, dismiss the bill altogether. The action of the court is guided by the justice required by each particular case, freely sought for, in the exercise of the widest discretion, in order to the protection of property in the most cheap, efficient, and expeditious manner. Undoubtedly, a delay to apply for the length of time which the bill discloses, after the injury was done, would, under almost any probable circumstances, deprive the plaintiffs of relief by way of *preliminary* injunction, if the right to hold their lands disincumbered from the flow were *disputed* upon the application. It *might*, and indeed delay for a much shorter period *would*, under certain circumstances, deprive the plaintiffs of *all* title to relief, even at the final hearing of the cause, upon the ground of active or even passive acquiescence in the enjoyment of the defendants; and, in case of large outlay by the defendants in the sight of the plaintiffs, founded upon such acquiescence, might not only deprive the plaintiffs of the right to all equitable aid, but subject them to the active interposition of the court, in case they pursued the defendants at law. But what right have we to infer this, or any degree of acquiescence by the plaintiffs whatsoever, or even any laches on their part, from the mere fact of five years delay to apply to this court being stated in the bill? There is no positive rule of law that five years' delay to complain, disentitles a party to apply for the aid of a court of equity on the ground either of laches or acquiescence. Under some circumstances, a much shorter period would conclusively prove *either* or *both*, and under others, a much longer period would afford no such proof; the existence or absence of laches or acquiescence being inferences of fact from facts of which time constitutes but one element. Such inferences of fact, as we have frequently stated, we have no right to draw upon demurrer, unless they are also inferences of law; and this holds, whether they are sought to be drawn from time, or any other fact stated in the bill. When, indeed, it appears from the bill, that the time during which the plaintiff has slept upon his wrongs *bars* his remedy in equity, as, for instance, twenty years in analogy to the legal limitation in case of real rights or specialties, or six years in case of matters of simple contract, then it is true, that

time, like any other bar to relief apparent on the bill, may be taken advantage of by demurrer. In such case, to avoid the objection, the plaintiff must anticipate it by the allegations of his bill, and give therein the legal excuse, if any he has, for his delay to prosecute ; bringing himself, for instance, within the savings of the statute, or setting forth any purely *equitable* excuse for it, if there be any, in the circumstances of his case. But where time can be used against the applicant merely as a fact from which laches or acquiescence may be inferred under circumstances, its excuse, if any there be, may be given in proof, without allegations adapted to it set forth in the bill. It is thus that the rule upon this subject is laid down by Mr. Daniel in his work on Chancery Pleading and Practice, vol. 1, p. 624 ; and he cites for it the case of *Cuthbert* v. *Creasy*, a case in which the subject of the effect of time upon equitable interference, was at least in some aspects agitated, and which, or some branch of which, seems to have been finally determined in the house of lords. *Cuthbert* v. *Creasy*, 6 Mad. 189 ; *Cuthbert* v. *Creasy*, 4 Bligh. 125. The same distinction is taken, and the same doctrine held in *O'Kelly* v. *Glenny*, 9 Irish Eq. R. 25, and in *McDowl* v. *Charles*, 6 Johns. Ch. R. 137. See also *Radcliffe* v. *Rowley*, 2 Barb. Ch. R. 23, 32 ; *Dewhirst et al.* v. *Wigley et al.* 1 C. P. Cooper's Ch. R. Rep. 319.

Another ground of demurrer set up by the defendants is, that the bill does not state a case of irreparable or destructive mischief.

The case stated in the bill is a flowage of the lands of the plaintiffs, in its nature as destructive a nuisance to land, for all the purposes of *land* as distinguished from water, as can well be imagined, provided the flow be to any considerable extent. It is true, that the bill does not allege the extent of the flow; but under the allegations of the bill the plaintiffs will be at liberty to prove a flow to *any* extent; and again, under the rules first adverted to, applicable to demurrers of this sort, we have no right to intend, against the bill, that a flow cannot be proved, to any, the most destructive extent imaginable.

But it is said, that this notion is rebutted by the fact alleged in the bill, that during all the time of the last twenty years the

dam has been kept up, and until within about five years past, the defendants, as owners of the dam, have compensated the complainants, as owners of the lands flowed, for the injury caused by the flowage. We grant that this fact would be an excellent reason upon a motion for a preliminary injunction why the motion should not be granted until the right had been established, provided the right were in dispute; since, it would show that the damage, whatever it might be, is, in the estimate of the parties, susceptible of compensation. Such a fact, that is, the receiving from *others* compensation for a similar mischief to that complained of, was used, with effect, for the purpose of preventing the grant of an injunction on motion, in the before cited case of *Wood* v. *Sutcliffe*. But suppose that the right of the plaintiffs, for we have a right to suppose it on demurrer for want of equity, is admitted by the answer, or is established under the direction of this court, in a suit or at law, or to the satisfaction of the court at the hearing of the cause, and the injury caused by the flow is proved to be of a serious character, being, as it is, a *continuous*, as distinguished from a *fugitive* trespass, *could* the court not enjoin, *ought* it not to enjoin the defendants from practising this wrong upon the plaintiffs in the way of a preventive remedy, to save property from a continuing injury, as well as to prevent the necessity of bringing a multiplicity of suits at law to obtain redress? For a clear statement of this ground of the jurisdiction of the court, and the principles which regulate its application in such a case, we refer to the opinion of Kindersley, vice-chancellor, in *Wood* v. *Sutcliffe*, 8 Eng. L. & Eq. R. 219, 220, and see also 2 Story's Eq. Jurisp. § 925; *Duke of Beaufort* v. *Morris*, 6 Hare, 31 Eng. Cond. Ch. R. 340.

And lastly, it is said, that the bill is fatally defective, because it does not state that the flowage it complains of, is *not* under claim of right. It is true that it does not use this form of language; but it sets out that the plaintiffs are the owners of two tracts of land,—that the defendants, by their dam, flow it with the water raised thereby; and so far from disclosing any right of the defendants to cause this mischief, alleges, that for some time, not specified, the defendants compensated them for the

injury done, and have omitted to do so since 1850. These facts certainly imply, as a matter of law, injury, in the proper sense of the term,—that is, as intending " wrong," as well as damage; and justify the inference of law stated in the bill, which it is granted would not otherwise be admitted by the demurrer, that the dam, by causing the flowage, creates a *nuisance* on the plaintiffs' lands. The bill thus states a case of nuisance, and the demurrer admits it. Certainly, if .the defendants were at liberty to imply any facts from the statements of the bill, which they are not, these are statements from which a right of the defendants to " injure," as the bill charges, the land of the plaintiffs, could not, with any reason, be inferred.

The suggestion at the argument that the bill disclosed that the plaintiffs' title was doubtful, was probably founded upon the idea that, because it did not, as it was supposed, deny that the defendants claimed to flow by right, it therefore admitted that they did so claim, as well as upon the notion, that a court of equity, on demurrer, deemed every legal right doubtful which it was called upon to protect, unless the bill alleged that the right had, before the filing of the bill, been established at law. We have seen, however, that a court of equity, under proper circumstances, will not only retain a bill in which the title is confessedly doubtful, but direct a trial at law to ascertain it, or will itself ascertain the title at the hearing, and even grant a special injunction in the mean time for its protection, if that is necessary to save it from irreparable or even serious injury. But if the bill states a title, that is, in reference to the case we are considering, the ownership of lands by the plaintiffs, and discloses no right on the part of the defendants, and also states the fact that the defendants do flow these lands, and a demurrer is filed, which, for the purpose of trying the equity of the bill, admits these statements to be true, we are at a loss to perceive how it can be said that the title of the plaintiffs is in any legal sense doubtful, however the fact, when the cause is put to issue, may turn out to be.

This bill is certainly very meagre in its statements, and quite possibly, as suggested by the counsel for the defendants, was purposely so drawn to escape a demurrer, to which a fuller

statement of the truth of the case would have properly subjected it. If this be so, the defendants will have the advantage of this yet undisclosed truth, by way of defence, in their answers and proofs; but, for the reasons above stated, this demurrer cannot be allowed, and the defendants must answer over.